UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10327-GAO

MARIA MONTIERO PIRES,
Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner, Social Security Administration,
Defendant.

OPINION AND ORDER
March 18, 2014

O'TOOLE, D.J.

The Commissioner of the Social Security Administration denied Maria Montiero Pires's ("Pires") application for Social Security Disability Insurance ("SSDI") benefits. Before the court are the plaintiff's motion to remand (dkt. no. 8), and the defendant's motion to affirm the Commissioner's decision (dkt. no. 13).

## I.    Procedural History

Pires filed an application for SSDI on August 14, 2009, claiming disability from a back injury with an onset date of July 23, 2009 (Administrative Tr. 122-127, 154 [hereinafter R.].)[1] The application was initially denied on August 26, 2009, and denied upon reconsideration January 15, 2010. (R. at 66-70, 72-74). Pires requested a hearing, which was held before Administrative Law Judge Sean Teehan ("ALJ") on February 10, 2011 (R. at 27-65). On August 26, 2011, the ALJ issued a decision concluding that Pires was not disabled under the Social

---

[1] The administrative record has been filed electronically (dkt. no. 6.) In its original paper form, its pages are numbered in the lower right-hand corner of each page. Citations to the record are to the pages as originally numbered, rather than to numbering supplied by the electronic docket.

Security Act. (R. at 10-26). On December 23, 2011, the Appeals Council denied the Plaintiff's request for review (R. at 1-5), rendering the ALJ's decision the final decision of the Commissioner, exhausting the Plaintiff's administrative remedies, and making the case ripe for review by this Court under 42 U.S.C. § 405(g).

## II.    Medical History

### A.    Background

Pires was born in Cape Verde. (R. at 18, 21). She speaks Portuguese, attended school in Cape Verde through the fourth grade, and is illiterate in English. (R. at 21). She was 40 years old at her reported onset date. (R. at 21.) Her prior work has included jobs working as a mailroom clerk and as a cleaner. (R. at 59).

### B.    Medical History Presented to the ALJ

The record indicates Pires injured her back in April 2009 while pushing a heavy shelf while working as a cleaner at Massachusetts General Hospital ("MGH"). She suffered lower back pain that radiated to her buttocks, and was instructed to take a week off from work and not to lift more than twenty pounds upon her return. (R. at 231-32.) In May an MRI revealed an L4-5 disc herniation with moderate spinal stenosis, and right greater than left neuro-foraminal stenosis. (R. at 323.) On July 23, 2009, Pires saw her primary care physician, Dr. Giovanna Leddy, at the Bowdoin Street Health Center. Notes from Dr. Leddy, who is affiliated with Beth Israel Deaconess Medical Center ("Beth Israel"), indicate a history of chronic back pain, and degenerative changes at the L4-5 level, and pain radiating into the Plaintiff's legs. (R. at 204.) On August 3, 2009, Dr. Leddy completed a form recommending she remain on light duty at least through September 2.

On August 25th, Dr. Gopal completed a Residual Functional Capacity ("RFC") assessment of her medical records for the Agency. (R. at 268-75.) Dr. Gopal concluded Pires could occasionally carry twenty pounds and frequently carry ten pounds that she could stand, sit or walk six hours out of an eight-hour day, and occasionally climb, balance, stoop, kneel, crouch, and crawl. (Id. at 269-70).

On Pires's return visit to Dr. Leddy on September 3, 2009, the doctor indicated she could return to work the next day. (R. at 269.) She was limited to only lifting, carrying, pulling, or pushing up to five pounds, and to standing for only one hour per day. (R. at 269) Dr. Leddy noted a desk or mailroom position would be "preferable." (R. at 269.) No limitation on sitting or walking was mentioned. (R. at 269.) When Pires returned on September 30, they had what Dr. Leddy described as a long conversation indicating to Pires that Dr. Leddy did not think she should be doing any heavy lifting, or pushing of carts as she did in her old job when cleaning the labs at MGH, but that Dr. Leddy did not think she was chronically disabled. (R. at 279.) Dr. Leddy believed she could work at a desk job or administrative position. (R. 279.)

In December 2009 a second RCF assessment was completed by Dr. Barbara Scolnick on behalf of the Agency. (R. at 310-17.) After review of the Plaintiff's records, Dr. Scolnick concluded Pires could frequently carry ten pounds and carry up to twenty pounds occasionally. (R. at 311.) Dr. Scolnick concluded she could sit, stand, or walk for six hours of an eight hour work day, and could frequently climb ramps and stairs, and occasionally climb ropes and scaffolds. (R. at 312.) Dr. Scolnick found she could frequently balance, and could occasionally stoop, kneel, crouch and crawl. (R. at 312).

In 2010 Pires began seeing Dr. Richard Bird at the Upham's Corner Health Center, who repeatedly recommended she not work in any capacity that involved sitting, standing, or bending

forward, which would decrease her chances for a full recovery. (R. at 326, 328-330, 338.) Although concluding she was "essentially totally [disabled] at this time," he did remark that the restrictions were "hopefully temporary." (R. at 329.) Pires had consulted with Dr. Kevin McGuire regarding surgery, but was waiting to see if worker's compensation would cover the procedure. (R. at 328-30.) In the meantime, Dr. Bird noted Pires's symptoms were improving, and she was hoping to avoid surgery. (R. at 329.) In July, Pires told Dr. Bird that she was able to walk, with breaks, up to a total of forty-five minutes, though with some pain. (R. at 333.) Her range of motion was back near normal. (R. at 333.) By early August her range of motion tested at normal. (R. at 335.) Unfortunately, she suffered a setback that caused her to reconsider surgery. (R. at 336, 338.)

In December 2010, Pires was examined by Dr. Robert Nicoletta. (R. at 340-45.) Dr. Nicolleta noted a March 2010 MRI revealed disc abnormalities in the L3-S1 range, and after comparing those results to the Plaintiff's May 2009 MRI, noted progressive changes over time, not related to Pires's work injury. He concluded the April 2009 work injury was a back strain superimposed on pre-existing lumbar degenerative disk disease. (R. at 342, 344-45.) Dr. Nicoletta concluded "[i]n terms of work capacity, the patient can be employed," and did not recommend any further restrictions based on the work injury. (R. at 345.) He further concluded any need for surgery would be for the degenerative disk disease, which he did characterize as "progressive," and not for the work injury. (R. at 345.)

C.     Medical History Presented to the Appeals Council

After the initial denial, Pires submitted additional medical evidence to the Appeals Council concerning her having undergone back surgery on July 15, 2011, approximately one month prior to the issuance of the ALJ's decision. (R. at 347-756.) . (R. at 364). At an exam

conducted by Pires's surgeon, Dr. Kevin McGuire at Beth Israel, in May 2011, during the lead up to surgery Pires exhibited mildly positive straight leg raises. (R. at 364.) She had some weakness on her right side that was not thought to present a functional problem. (R. at 364.) Pires's gait was normal, she was able to walk on her toes and heels without great difficulty, and had normal strength in her arms and legs. (R. at 364.)

Upon post-surgical discharge Pires was advised not to lift more than ten pounds, to avoid bending and twisting, but to ambulate as much as tolerated. (R. at 354). She had a follow-up appointment with Dr. McGuire on August 1, 2011. (R. at 607, 726-27). At this examination Pires reported no leg pain. (R. at 607.) She was neurologically intact, and the incision was clean, dry and intact. (R. at 607.) Dr. McGuire's notes indicate her hardware was intact. (R. at 609.)

At the end of August, Pires complained of lower adnominal/incisional pain. (R. at 611.) She also complained of intermittent cramping and pain in her left leg. (R. at 617, 630.) Upon examination, it appeared the cramping and pain may have been due to post-operative plexus firing. (R. at 631.) Her strength tested 5/5 and her gait was stable with a narrow base. (R. at 630).

## III. <u>Legal Standard</u>

### A. <u>Standard of Review</u>

In reviewing a denial of social security disability benefits, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); <u>Manso-Pizzarro v. Sec'y of HHS</u>, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's decision is supported by substantial evidence "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." <u>Irlanda Ortiz v. Sec'y of Health & Human Servs.</u>, 647 F.2d 765, 769 (1st Cir. 1991) (quoting <u>Rodriguez v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981). If

supported by substantial evidence, the Commissioner's determination must be upheld "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). The Appeals Council's decision on whether or not to review the ALJ's decision is a "discretionary decision may be reviewable to the extent that it rests on an explicit mistake of law or other egregious error." Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001). Pires is only challenging the Appeals Council's decision not to review her case.

B.      Disability Standard

The Social Security Administration has promulgated a five step sequential process for evaluating whether a claimant is disabled. 20 C.F.R. § 416.920. The agency must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has a "severe medically determinable physical or mental impairment" that also meets the duration requirements; (3)  whether the claimants impairment meets or medically equals an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to continue their past work; and (5) whether the claimant's RFC would allow them to transition to other work, in light of their age, education, and work experience. Id.

The Plaintiff bears the burden of showing she is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 146 (1987). "It is well established that, in applying this statutory standard, the claimant has the burden of showing a disability serious enough to prevent him from working at his former jobs, at which point the burden shifts to the Secretary to show the existence of other jobs in the national economy that the claimant can nonetheless perform." Vasquez v. Sec'y of HHS, 683 F.2d 1, 2 (1st Cir. 1982). This includes the claimant's RFC. 20 C.F.R. 404.1512.

## IV.    The ALJ's Decision

The ALJ determined Pires had not met the criteria for disability promulgated in 20 C.F.R. § 416.920. (R. at 13-22.) On step one, the ALJ determined Pires had not been engaged in substantial gainful activity since her onset date of July 23, 2009. (R. at 16.) At step two, the ALJ found the Plaintiff suffered from a severe impairment: her degenerative disk disease at the L4-L5 level. (R. at 16.) At step three, the ALJ concluded that Pires did "not have an impairment that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," because "[t]he medical evidence does not demonstrate clinical findings which would meet or equal the criteria section 1.04 the Listing of Impairments regarding disorders of the spine." (R. at 19.) The ALJ concluded that the Plaintiff's RFC would allow her to perform sedentary work as defined by 20 C.F.R. § 404.1567(a)[2], except that "she can only lift and carry occasionally and frequently 5 pounds, she can sit for six hours in an eight hour workday, stand for 2 hours in an eight hour workday, walk for 2 hours in an eight hour workday, she can never climb ladders or scaffolds, but is capable of occasionally climbing stairs and ramps, balancing, stooping, crouching, kneeling and crawling." (R. at 19.)

At step four, the ALJ concluded Pires's RFC would not allow her to return to past relevant work, but that in light of her age, RFC, education, work experience, and the testimony of a vocational expert, that she would be able to perform other work existing in the national economy. (R. at 20-21.) The ALJ noted that Pires would have some additional restrictions over the full range of sedentary work. (R. at 20.) However, the vocational expert assured the ALJ that

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

a significant number of jobs exist in the local and national economy that Pires could perform given her RFC. (R. at 21.) These include the jobs of optical goods polisher, of which 1800 positions exist in Massachusetts, and 73,000 exist nationally; the job of circuit board inspector, of which there are 700 local jobs and 20,000 in the national economy; and the job of mounter of photographs, of which there are 1,200 and 49,000 jobs in the Massachusetts and National Economies, respectively. (R, at 21-22.) The ALJ therefore concluded Pires was capable of making a successful adjustment to other work, and therefore not disabled. (R. at 22.)

## V.    The Appeals Council's Decision

On December 23, 2011, the Appeals Council issued a notice to Pires denying her request to review the ALJ's decision. (R. at 1-3.) The Council noted it "considered the reasons [the Plaintiff] disagree[d] with the decision and the additional evidence," namely, the evidence of her surgery (*See*, R. at 349-756), but concluded "this information does not provide a basis for changing the Administrative Law Judge's decision." (R. at 1-2.) Pires appeals this denial of review.

## VI.    Discussion

The Plaintiff's argument on appeal is that the Appeals Council erred by failing to review and remand Pires's case back to the ALJ when presented with additional medical evidence. (Pl's Br. at 3-6). This decision is reviewable, but only if the Council has given an "egregiously mistaken" reason for its denial. Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001). The Appeals Council will review a case if "[they] receive new and material evidence and the record and the decision is contrary to the weight of all the evidence now in the record." (R. at 1.) In denying review Pires's case, the Appeals Council's reasoned that the new information did not provide a basis for changing the ALJ's decision. The Plaintiff has failed to establish that this was an egregious mistake on behalf of the Appeals Council.

The Plaintiff suggests to the Court that it is "noteworthy" that Pires had not undergone surgery at the time of the ALJ hearing. (Pl's Br. at 4.) While major surgery after the ALJ hearing and before the Appeals Council's denial of review is certainly noteworthy, the evidence is also noteworthy for what it lacks. Surgery may result in a significant change in the RFC of a claimant, but there is no direct evidence suggesting such a change. Of the 408 pages of additional evidence before the Appeals Council, the vast majority documents the surgery and post-operative hospital stay itself. (R. at 349-605, 633-727, 729-756.) The direct evidence presented about Pires's post-operative physical condition consists only of her Discharge Summary and Patient Discharge Plan (R. at 351-60.), a follow up visit with her surgeon (R. at 607-08.), and two visits in the end of August where the Plaintiff complained of lower abdominal/incision pain and intermittent cramping and pain in one leg (R. at 611-30.).

This new information is not inconsistent with Pires's RFC as presented at the ALJ hearing. Upon discharge, the Plaintiff was advised she could lift up to ten pounds and could ambulate as much as tolerated. (R. at 354.) She was advised to avoid bending and twisting. (R. at 354.) At her August 3 follow up appointment, Dr. McGuire noted she had no leg pain, she was neurologically intact. (R. at 607.) She had no problems with her hardware. (R. at 609.) She eventually complained of some problems with lower abdominal/incisional pain, and leg cramping, but there is nothing to suggest these issues were more than temporary. (R. at 608, 611, 630.) Upon examination on August 30, her Spine Consult notes she is ambulatory, had back pain that was worse with walking, but non-radiating. (R. at 630.) She showed 5/5 strength, with sensation intact, and a narrow, steady gait. (R. at 630.)

The ALJ, though lacking this information, concluded that Pires's RFC would allow her to complete sedentary work. (R. at 19-20.) The ALJ found "she can only lift and carry occasionally

and frequently five pounds, she can sit for six hours in an eight hour workday, stand for two hours in an eight hour workday, walk for two hours in an eight hour workday, she can never climb ladders or scaffolds, but is capable of occasionally climbing stairs and ramps, balancing, stooping, crouching, kneeling and crawling." (R. at 19.) Aside from the instruction not to bend or twist, whereas the RFC allowed for occasional stooping, there is no evidence of a significant change in functional capacity after surgery.

The Plaintiff has presented no evidence that either her physical condition or her RFC was substantially diminished by the surgical procedure. Therefore, the Appeals Council was not egregiously mistaken, having reviewed the evidence, in deciding it was not new, material, and potentially contrary to the weight of other evidence.

## VII.    Conclusion

For the reasons stated herein, Pires's Motion to Remand (dkt. no. 8) is DENIED, and the Motion to Affirm (dkt. no. 13) is GRANTED. The decision of the Commissioner is AFFIRMED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge